United States District Court
Southern District of Texas
**ENTERED**
September 30, 2022
Nathan Ochsner, Clerk

### I'M UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

| | | |
|---|---|---|
| NOEL TURNER, | § | CIVIL ACTION NO |
| Plaintiff, | § | 4:19-cv-04124 |
| | § | |
| | § | |
| vs. | § | JUDGE CHARLES ESKRIDGE |
| | § | |
| | § | |
| BRYAN COLLIER, | § | |
| *et al*, | § | |
| Defendants. | § | |

### OPINION AND ORDER
### GRANTING SUMMARY JUDGMENT IN PART AND GRANTING
### TEMPORARY INJUNCTIVE RELIEF

The motions by Texas Department of Criminal Justice, Bryan Collier, David Goldstein, and Timothy Jones for summary judgment are granted in part and denied in part. Dkts 94 & 110.

The motion by Noel Turner for preliminary injunctive relief is granted. Dkt 102.

1.  Background

Noel Turner is an inmate at the Texas Department of Criminal Justice. Dkt 66 at ¶ 1. He contends that he was born and raised Jewish, that he has earnestly practiced his faith both before and while in prison, and that this includes observing a kosher diet. Id at ¶¶ 24–26. He contends, "To eat non-kosher food damages the soul/spiritual aspect of the individual. It is a sin/transgression of Biblical Commandments." Dkt 13 at 14. To this end, and due to his status as an indigent inmate, Turner seeks free shelf-stable kosher meals, a hot pot to heat those meals, and a storage locker for such items. See Dkt 66 at 20–21.

Turner brought this action *pro se* in December 2018. Dkt 1. His filings are thus liberally construed. *Erickson v Pardus*, 551 US 89, 94 (2007). Named as defendants are Texas Department of Criminal Justice (as administrator of the prison system of the State of Texas), Bryan Collier (as Executive Director of the TDCJ), Rabbi David Goldstein (as a contracted rabbi within the TDCJ Chaplaincy Department), and Timothy Jones (as the TDCJ Deputy Director of Chaplaincy). See Dkt 66 (second amended complaint).

The heading of the second amended complaint suggests that the individual Defendants are sued in their individual *and* official capacities. Id at 1. But the pleading itself suggests that they are sued in their individual capacity alone. Id at ¶¶ 11, 13–14. Given that Turner primarily seeks injunctive relief while also suing the TDCJ in its "individual and official capacities," it will be assumed that the individual Defendants are also sued in both capacities. Regardless, to the extent that they all assert qualified immunity, it doesn't "protect officials from injunctive relief." *Williams v Ballard*, 466 F3d 330, 334 n 7 (5th Cir 2006). Defendants will thus be referred to together as *TDCJ*.

The TDCJ Chaplaincy Department implements procedures to facilitate the pursuit of "individual religious beliefs and practices, consistent with security, safety, and orderly conditions in the unit." Dkt 94-4 at 2. To this end, TDCJ maintains two types of Jewish designated units. *Enhanced Jewish* units provide free kosher meals to all residents. Id at 4. *Basic Jewish* units make kosher products available "for purchase at the offender's expense." Ibid. TDCJ currently maintains one enhanced Jewish unit, which is Stringfellow. It also maintains three basic Jewish units—Jester III, Stiles, and Wynne. Ibid.

An offender may qualify for the enhanced Jewish unit in one of three ways. *First*, if he's born of a Jewish mother. *Second*, if he maintains a Jewish background with continuous study in the Jewish faith. *Or third*, if he converts to Judaism in a manner consistent with Jewish

law. An offender may qualify for a basic Jewish unit if he satisfactorily completes thirty of forty-five lessons in the Jewish Interest Correspondence Course *and* maintains knowledge of the Jewish faith and sincerely holds that faith as determined by a Jewish rabbi employed by the TDCJ. An offender who properly qualifies for either unit type yet can't be assigned to that unit because of custody level, required treatment or educational program, or other reason may be transferred to another unit "until the condition preventing transfer changes." Dkt 94-4 at 5.

Turner was first incarcerated in 1989 for a felony offense in Angelina County, Texas. Dkt 94-6 at 53. He asserts that he was placed in Coffield until 1991, at which time he was transferred to Ramsey II so that he could participate in Jewish services. TDCJ transferred him to Stringfellow later that same year. TDCJ then transferred Turner to Central in 1999, and it soon after transferred him to Huntsville. Dkts 66 at ¶ 35 & 114 at 6. In 2004 during the same prison sentence, Turner received two medical restrictions that limited him to single-level facilities. Dkt 94-6 at 17; Dkt 66 at ¶ 34. Turner asserts that despite this designation, he was again transferred to Stringfellow—a multi-level facility—in 2007 so that he could participate in its newly implemented kosher food program. He remained there until he was attacked by another prisoner. Dkt 66 at ¶ 38; Dkt 13 at 8. TDCJ thereafter transferred Turner to an unspecified unit, where he resided until his release in January 2009. Dkts 13 at 8, 66 at ¶ 40 & 94-6 at 53.

Turner's present incarceration began in June 2013. Dkt 94-6 at 53. He was assigned to Jester III—a single-level facility that is, as previously noted, a basic Jewish unit. Dkt 66 at ¶ 42. But he wasn't approved for Stringfellow, the enhanced Jewish unit. Dkt 94-4 at 6–7. Indeed, his religious classification was erroneously entered as "unspecified Christian." Turner altered this classification immediately upon discovery in October 2013. Dkt 13 at 16. He was thus allowed to participate in Jewish programming while housed at Jester III. Dkt 94-4 at 6–7.

Turner first applied for assignment to an enhanced Jewish-designated unit in 2016. That request was denied due to his disciplinary history. Dkt 94-2 at 6–9. But Turner remained at Jester III until October 2018, at which time he was temporarily transferred to Terrell due to safety concerns. Dkts 13 at 1 & 94 at 5. Turner in 2019 again applied to be housed at a Jewish-designated unit in hopes of returning to Jester III. Dkts 94-2 at 3 & 94-3 at 8. Rabbi Goldstein approved that request upon determining that Turner qualified for basic Jewish units but not for the enhanced Jewish unit. Dkt 94-3 at 4–10. Turner returned to Jester III on April 26, 2019. Dkts 66 at ¶ 42 & 13 at 1. But he was again transferred in December 2020 due to concerns for his safety. Dkt 48 at 1.

Turner currently resides at Powledge, which isn't a Jewish-designated unit. But it appears that the unit nonetheless makes kosher food available for purchase in the commissary. Dkts 13 & 66 at ¶ 51. Turner alleges that he's unable to access that food due to his indigent status. Dkt 66 at ¶ 51. Indeed, Turner has made multiple requests for free kosher meals—including filing Step One and Step Two grievances. See Dkts 13 at 5 & 94-3 at 44. TDCJ has rebuffed these requests. Dkt 13 at 5–7 & 94–3 at 44. He consequently brought this action, asserting claims under the Religious Land Use and Institutionalized Persons Act, the First Amendment, the Americans with Disabilities Act, the Texas Religious Freedom Restoration Act. Dkt 1. Claims for negligence were added in Turner's First Amended Complaint. Dkt 35 at 19.

Collier, Goldstein, and TDCJ moved to dismiss in July 2020. Dkt 41. Judge Vanessa D. Gilmore granted the motion as to the TRFRA and negligence claims but denied it as to the RLUIPA, ADA, and constitutional claims. Dkt 52. The motion to dismiss compensatory damages under the ADA was also granted, but with leave to amend. Ibid.

Turner filed his second amended complaint in April 2021, adding a Fourteenth Amendment claim and Jones as a defendant. Dkt 66. Collier, Goldstein, and TDCJ moved

for summary judgment in September 2021. Dkt 94. The action was reassigned to this Court in December 2021. Dkt 100. Turner moved for a preliminary injunction in January 2022. Dkt 102. Jones moved for summary judgment in June 2022. Dkt 110.

### 2. Legal standards

#### a. Summary judgment

Rule 56(a) of the Federal Rules of Civil Procedure requires a court to enter summary judgment when the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is *material* if it "might affect the outcome of the suit under the governing law." *Sulzer Carbomedics Inc v Oregon Cardio-Devices Inc*, 257 F3d 449, 456 (5th Cir 2001), quoting *Anderson v Liberty Lobby Inc*, 477 US 242, 248 (1986). And a dispute is *genuine* if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Royal v CCC & R Tres Arboles LLC*, 736 F3d 396, 400 (5th Cir 2013), quoting *Anderson*, 477 US at 248.

The summary judgment stage doesn't involve weighing the evidence or determining the truth of the matter. The task is solely to determine whether a genuine issue exists that would allow a reasonable jury to return a verdict for the nonmoving party. *Smith v Harris County*, 956 F3d 311, 316 (5th Cir 2020). Disputed factual issues must be resolved in favor of the nonmoving party. *Little v Liquid Air Corp*, 37 F3d 1069, 1075 (5th Cir 1994). All reasonable inferences must also be drawn in the light most favorable to the nonmoving party. *Connors v Graves*, 538 F3d 373, 376 (5th Cir 2008).

The moving party typically bears the entire burden to demonstrate the absence of a genuine issue of material fact. *Nola Spice Designs LLC v Haydel Enterprises Inc*, 783 F3d 527, 536 (5th Cir 2015); see also *Celotex Corp v Catrett*, 477 US 317, 322–23 (1986). But when a motion for summary judgment by a defendant presents a question on which the plaintiff bears the burden of proof at trial, the

burden shifts to the plaintiff to proffer summary judgment proof establishing an issue of material fact warranting trial. *Nola Spice*, 783 F3d at 536. To meet this burden of proof, the evidence must be both "competent and admissible at trial." *Bellard v Gautreaux*, 675 F3d 454, 460 (5th Cir 2012).

  b.   Preliminary injunction

A preliminary injunction is an "extraordinary remedy." *Byrm v Landreth*, 566 F3d 442, 445 (5th Cir 2009). Its purpose is to preserve the *status quo* during pendency of the litigation. See *City of Dallas v Delta Air Lines Inc*, 847 F3d 279, 285 (5th Cir 2017). As stated by the Fifth Circuit, "The purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Canal Authority of the State of Florida v Callaway*, 489 F2d 567, 576 (5th Cir 1974).

A federal court may generally grant a preliminary injunction only on a movant's showing as to the familiar factors of (i) a substantial likelihood of success on the merits; (ii) a substantial threat of irreparable harm; (iii) the balance of equities tips in the applicant's favor; and (iv) an injunction is in the public interest. *Robinson v Hunt County*, 921 F3d 440, 451 (5th Cir 2019). Once such findings are made, crafting a preliminary injunction is "an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents." *Trump v International Refugee Assistance Project*, 137 S Ct 2080, 2087 (2017).

A court issuing a preliminary injunction must provide findings and conclusions that support its decision. FRCP 52; see also *Ali v Quarterman*, 607 F3d 1046, 1048 (5th Cir 2010); Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2949 (Westlaw 2022). But the preliminary injunction stage is less formal than trial, and the Supreme Court generally recognizes that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas*

*v Camenisch*, 451 US 390, 395 (1981). A federal court may thus consider hearsay and similar evidence when deciding whether to enter a preliminary injunction. See *Sierra Club, Lone Star Chapter v FDIC*, 992 F2d 545, 551 (5th Cir 1993).

### 3. Analysis

The motions by Defendants for summary judgment as to Turner's claims under the First Amendment, Fourteenth Amendment, and ADA will be addressed first. Dkts 94 & 110. Then follows determination of the motion by Turner for preliminary injunction as it relates to his RLUIPA claim. Dkt 102.

### a. Free exercise of religion

"Lawful incarceration inherently involves the limitation of many privileges and rights, but prisoners still benefit from some constitutional protections, including the First Amendment 'directive that no law shall prohibit the free exercise of religion.'" *Butts v Martin*, 877 F3d 571, 584 (5th Cir 2017), quoting *O'Lone v Estate of Shabazz*, 482 US 342, 348 (1987). That right has been incorporated against the states via the Due Process Clause of the Fourteenth Amendment. *Cantwell v Connecticut*, 310 US 296, 303 (1940). And it may be enforced against state officials through 42 USC § 1983.

"Whether a prison regulation impermissibly encroaches upon a prisoner's First Amendment rights depends upon whether it is reasonably related to legitimate penological interests." *Butts*, 877 F3d at 584 (quotation marks and citation omitted). To that end, courts must determine:

> (i) whether a valid, rational connection exists between the prison regulation and the legitimate governmental interest put forward to justify it, (ii) whether there exist alternative means of exercising the fundamental right that remain open to prison inmates, (iii) what impact accommodation of the asserted constitutional right will have on guards and other inmates, and

7

on the allocation of prison resources generally, and (iv) whether there is an absence of ready alternative to the regulation in question.

*Brown v Collier*, 929 F3d 218, 232 (5th Cir 2019) (quotation marks omitted), citing *Turner v Safley*, 482 US 78, 89–90 (1987). "Ultimately, the government objective must be a legitimate and neutral one." *Butts*, 877 F3d at 585 (quotation marks and citation omitted).

The Fifth Circuit has long held that "the denial of a kosher diet does not violate" the Free Exercise Clause. *Baranowski v Hart*, 486 F3d 112, 122 (5th Cir 2007); see also *Kahey v Jones*, 836 F2d 948, 950–51 (5th Cir 1988); *Udey v Kastner*, 805 F2d 1218, 1221 (5th Cir 1986). This necessarily means that a policy making kosher meals available for purchase isn't a violation either.

Summary judgment will be granted as to Turner's claim under the First Amendment.

b.   Equal protection of the laws

To succeed on his equal protection claim, a plaintiff "must prove purposeful discrimination resulting in a discriminatory effect among persons similarly situated." *Adkins v Kaspar*, 393 F3d 559, 566 (5th Cir 2004) (quotation marks and citation omitted).

Turner alleges that he's being discriminated against due to his disability. He argues that non-disabled individuals in an enhanced Jewish unit receive free kosher meals, whereas those who otherwise qualify for such a unit but can't be housed there due to a disability aren't provided free kosher meals. See Dkt 66 at ¶¶ 137–138.

The argument fails for two reasons. *First,* the factual foundation is incorrect. TDCJ has determined that Turner *doesn't* qualify for an enhanced Jewish unit. Dkt 94 at 15. He thus *isn't* similarly situated to those who do qualify for such a unit. *Second,* even if equal protection analysis applied, "disability is not a suspect classification like race, alienage, or national origin, or a quasi-suspect classification like gender." *D.C. v Klein Independent School*

8

*District*, 711 F Supp 2d 739, 748 (SD Tex 2010), citing *City of Cleburne v Cleburne Living Center*, 473 US 432, 442 (1985). And TDCJ easily clears the rational basis analysis that pertains.

Summary judgment will be granted on Turner's claim under the Fourteenth Amendment.

### c.   American with Disabilities Act

Turner claims he is denied access to free kosher meals because of his disabilities. And he argues that such a denial violates the ADA. Dkt 66 ¶¶ 78–80. TDCJ moves for summary judgment based on Eleventh Amendment immunity and failure to demonstrate denial of benefit. Dkt 94 at 17.

### i.   Eleventh Amendment Immunity

TDCJ presents only a brief argument that the ADA claim brought by Turner is barred by Eleventh Amendment immunity. Dkt 94 at 17–18. The applicability of such a defense presents a complicated legal question that requires analysis of which aspects of the alleged conduct by the State violated Title II; to what extent such misconduct also violated the Fourteenth Amendment; and whether (insofar as such conduct violated Title II but didn't violate the Fourteenth Amendment) the purported abrogation of sovereign immunity by Congress in such contexts is nevertheless valid. *Smith v Hood*, 900 F3d 180, 184 (5th Cir 2018), quoting *United States v Georgia*, 546 US 151, 159 (2006).

The claim by Turner clearly fails on an essential element of an ADA claim—that being that he was not prevented from participating in the enhanced designated unit *because of* his disability. The question of Eleventh Amendment immunity needn't be addressed.

### ii.   Denial of a benefit

To prevail on an ADA claim, a plaintiff must show that his exclusion from a service was based upon his disability. *Davidson v Texas Department of Criminal Justice*, 91 F Appx 963, 965 (5th Cir 2012); see also *Melton v Dallas Area Rapid Transit*, 391 F3d 669, 676 n 8 (5th Cir 2004).

Turner contends that TDCJ is denying his participation in the free kosher food program due to his disabilities—specifically, he can't be housed in Stringfellow because he's limited to single-level facilities. Dkt 66 at 9–10. To the contrary, Turner's disability isn't the reason he wasn't transferred to an enhanced Jewish unit. He instead didn't qualify for such a unit under TDCJ chaplaincy policy. Dkt 94-4 at 4–5. This means that, even absent his disability, he still wouldn't receive the benefit he seeks.

Summary judgment will be granted as to Turner's claim under the ADA.

> ### d. Religious Land Use and Institutionalized Persons Act

TDCJ seeks summary judgment on Turner's RLUIPA claim. To the contrary, Turner has demonstrated a substantial likelihood of success on the merits. This in turn supports entry of a preliminary injunction in his favor.

Proper framing of Turner's RLUIPA claim is essential. TDCJ argues, "Turner cannot show that he is presently qualified to be housed on an enhanced Jewish designated unit." Dkt 94 at 17. But that isn't Turner's request. He doesn't ask for a transfer or even recognition that he qualifies for such a transfer. He instead seeks injunctive relief ordering TDCJ simply to provide him free shelf-stable kosher meals, a hot pot, and a locker to store such items—accommodations that will allow him to maintain a kosher diet without regard to where he's housed. See Dkts 66 at 20–21 & 98 at 1.

The narrow question at hand, then, is whether withholding the accommodation actually sought by Turner violates his RLUIPA rights.

> #### i. Likelihood of success on the merits

RLUIPA provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the govern-

ment demonstrates that imposition of the burden on that person—

(1) is in furtherance of a compelling governmental interest; and

(2) is the least restrictive means of furthering that compelling governmental interest.

42 USC § 2000cc-1(a)(1)–(2).

There are, textually, four main points of inquiry:

o   Whether the practice at issue and the attendant, requested accommodation implicates a *religious exercise* within the meaning of RLUIPA;

o   Whether the subject governmental policy imposes a substantial burden on the specified religious exercise;

o   If so, whether a compelling governmental interest supports the burden imposed; and

o   If so, whether that interest is being implemented by the least restrictive means.

Related to the first inquiry is another, implicit one:

o   Whether the complaining party is sincere in his observance of the subject religious practice and attendant request for accommodation.

*Holt v Hobbs*, 574 US 352, 360–62 (2015); *Moussazadeh v Texas Department of Criminal Justice*, 703 F3d 781, 790 & 794–95 (5th Cir 2012).

RLUIPA requires a burden-shifting analysis. See 42 USC § 2000cc-1(a). A plaintiff must initially show that the challenged government practice imposes a substantial burden on his or her religious exercise. *Ramirez v Collier*, 142 SCt 1264, 1277 (2022). If shown, "the burden flips," with the government then required to demonstrate that the burden imposed is the least restrictive means of furthering a compelling governmental interest. Ibid (quotation marks and citation omitted); see also *Brown v Collier*, 929 F3d 218, 229 (5th Cir 2019).

11

Turner argues that the denial of free kosher food places a substantial burden on his religious exercise. Dkt 66 at ¶¶ 111, 145. TDCJ contests the sincerity of Turner's beliefs and argues that their existing policy is the least restrictive means of furthering a compelling government interest.

### A.   Religious exercise

RLUIPA defines *religious exercise* to mean "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 USC § 2000cc-5(7)(A). Kosher food is well-recognized practice by members of the Jewish faith. TDCJ doesn't dispute this. See Dkt 94 at 13–17. As such, the accommodation by which Turner seeks to maintain a kosher diet must be deemed to meet the definition of *religious exercise* under RLUIPA.

### B.   Sincerity

The Supreme Court instructs that a prisoner's requested accommodation "must be sincerely based on a religious belief and not some other motivation." *Holt*, 574 US at 360–61. The Fifth Circuit likewise observes that scrutiny into religious sincerity addresses the question of whether the adherent has "an honest belief that the practice is important to his free exercise of religion," which is "almost exclusively a credibility assessment." *Moussazadeh*, 703 F3d at 790 & 792 (cleaned up).

When contested, the issue depends strongly upon the specific facts of the case. The narrow question is whether the plaintiff personally believes that the desired religious practices are deeply important. See *Sossamon v Lone Star State of Texas*, 560 F3d 316, 332-33 (5th Cir 2009). It certainly isn't the place of federal, state, or local governments to dictate how religion should be practiced or to define who is and isn't devout. As observed by the Supreme Court, "Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs." *United States v Ballard*, 322 US 78, 86 (1944). And so quite clearly, the inquiry isn't a decision on the truth or validity of the inmate's belief. The question instead is only whether the belief is "truly held." *United States v*

*Seeger*, 380 US 163, 185 (1965). As such, sincerity is "generally presumed or easily established." *Moussazadeh*, 703 F3d at 791.

TDCJ contends that Turner can't demonstrate that he's Jewish under Jewish law. Dkt 94 at 16. For his part, Turner responds that he was born of a Jewish mother, which alone makes him a Jew under Jewish law. He also argues that he qualifies as having "a Jewish background with continuous study in the Jewish faith." Dkts 98 at 6 & 114 at 3; see also Dkt 94-4 at 5.

The argument and the rejoinder both miss the mark. The Fifth Circuit has noted wide agreement among the Circuits that "clergy opinion has generally been deemed insufficient to override a prisoner's sincerely held religious belief." *McAlister v Livingston*, 348 F Appx 923, 935 (5th Cir 2009). The question under RLUIPA, then, isn't whether the *religion* (or a certain sect of the religion) would consider plaintiff an observing member. The inquiry instead is whether the *plaintiff* sincerely holds the tenants of his asserted religion. See *Sossamon*, 560 F3d at 332.

Turner's sincere desire to maintain a kosher diet and practice the orthodox Jewish faith is undeniable. He sufficiently establishes or alleges at least the following:

- o He attended synagogue and kept kosher before coming to prison. Dkt 66 at ¶ 25.

- o He has maintained membership in the Aleph Institute—which Turner describes as "a Jewish organization that verifies Jewish origin, birth, background, and practice"—since 1990 and has completed all Aleph correspondence courses (though TDCJ has been unable to verify this claim). Dkts 66 at ¶ 27 n 1 & 98 at 6–7; but see 94-3 at 5.

- o He quickly corrected his religious classification in 2013 upon discovering it was entered incorrectly as "unspecified Christian." Dkts 13 at 16 & Dkt 94-3 at 2.

- o He's been an active member within TDCJ's Jewish Program during his incarceration, which TDCJ doesn't dispute. Dkt 114 at 4; see also Dkt 94 at 15.

- o He has requested access to kosher foods multiple times, including through Step One and Step Two grievances. See 94-2 at 5–10, 16–20; see also 94-3 at 44.

- o He brought action in 2017 challenging the religious headwear and grooming policies of TDCJ. See *Turner v Texas Department of Criminal Justice*, 4:17-cv-00297 (SD Tex) at Dkt 96 (dismissed as moot after modifications to TDCJ policy).

- o And he's steadfastly maintained this action since late 2018.

TDCJ admits elsewhere that Turner has met the requirements for basic Jewish housing. Dkt 94-3 at 6. It's thus difficult to entertain any deficiencies as to the sincerity of Turner's beliefs, especially when paired with the above thirty years of expressed interest in the orthodox Jewish faith and repeated attempts to obtain kosher foods.

Turner has made the requisite *prima facie* showing that the requested religious practices are deeply important to him as a subjective matter.

### C. Substantial burden

The plaintiff bears the initial burden of proof in a RLUIPA case to establish that the prison policy substantially burdens his religious exercise. *Holt*, 574 US at 360. But that burden is borne in a context where RLUIPA has granted "expansive protection for religious liberty," affording an inmate with "greater protection" than is available under the First Amendment. Id at 358 & 361.

A government practice imposes a *substantial burden* on religious exercise where it "truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v Kaspar*, 393 F3d 559, 569–70 (5th Cir 2004). A violation is

14

*significant* in this regard when it either "influences the adherent to act in a way that violates his religious beliefs" or "forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." Id at 570. By contrast, a government practice imposes no substantial burden "if it merely prevents the adherent from either enjoying some benefit that is not otherwise generally available or acting in a way that is not otherwise generally allowed." Ibid.

This typically is a fact-intensive inquiry that requires a case-by-case analysis. *Turner v Texas Department of Criminal Justice*, 836 F Appx 227, 230 (5th Cir 2021, *per curiam*). But requests for religious accommodation in other contexts provide helpful comparison. Indeed, the Fifth Circuit case *Moussazadeh v Texas Department of Criminal Justice* presents substantially similar facts to those at issue here. The prisoner in *Moussazadeh* qualified for an enhanced Jewish unit. But he was removed from that unit and placed in a basic Jewish unit due to a disciplinary infraction. He was thus relegated to purchasing kosher food from the commissary. The prisoner subsequently brought action under RLUIPA, seeking free kosher meals. 703 F3d at 786–87. Regarding substantial burden, the Fifth Circuit found:

> Where an inmate is denied a generally available benefit because of his religious beliefs, a substantial burden is imposed on him. Every prisoner in TDCJ's custody receives a nutritionally sufficient diet. Every observant Jewish prisoner at Stringfellow receives a kosher diet free of charge. Only Moussazadeh is denied that benefit, because he is forced to pay for his kosher meals. This practice substantially burdens his ability to exercise his religious beliefs.

*Moussazadeh*, 703 F3d at 794.

15

The only difference between the prisoner in *Moussazadeh* and Turner is that Turner isn't qualified for an enhanced Jewish unit. But TDCJ is responsible for that distinction because it arrogates to itself a purported ability to define which inmates sincerely hold certain religious beliefs. When that dubious sorting is set aside—and when the inmate's own sincerely held religious beliefs provide the marker, as required by RLUIPA—Turner's situation is precisely that of the inmate in *Moussazadeh*. Both maintain a sincerely held belief that they are Jewish. Both believe they must maintain a kosher diet. And both are forced to purchase kosher meals through the commissary. As such, these circumstances substantially burden Turner's religious exercise.

Two further observations are readily apparent. One is that Turner can't access kosher food in the commissary due to his indigent status. The other is that this reality forces him to face an unavoidable choice every day of either breaking his religious tenants or facing malnutrition. Dkt 66 at ¶¶ 43–45. Turner himself asserts that he's relegated to eating bread, vegetables, and beans as available with meals or trading his meals for kosher commissary items. Dkt 114 at 7; see also Dkt 87. In other words, TDCJ policy is forcing Turner to choose between a generally available, non-trivial benefit—that is, free nutritious meals—and following his sincerely held religious beliefs. See Dkt 66 at ¶ 43; *Adkins*, 393 F3d at 570.

Based on the present record, Turner has sufficiently shown a substantial burden on his religious exercise.

### D. Compelling government interest

As to defining a *compelling governmental interest* in the religious-exercise context, the Supreme Court stresses, "The essence of all that has been said and written on the subject is that only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion." *Wisconsin v Yoder*, 406 US 205, 215 (1972). The Supreme Court and the Fifth Circuit have both returned to this articulation in recent years. See *Fulton v City of Philadelphia*, 141 S Ct 1868,

16

1881 (2021); *McAllen Grace Brethren Church v Salazar*, 764 F3d 465, 472 (5th Cir 2014). The Fifth Circuit has likewise observed, "In this highly sensitive constitutional area only the gravest abuses, endangering paramount interests, give occasion for permissible limitation." *Combs v Central Texas Annual Conference of the United Methodist Church*, 173 F3d 343, 346 (5th Cir 1999) (cleaned up).

TDCJ argues that the injunction requested by Turner would require it to not only "face the direct costs of the purchase of kosher food and appliances" but would also require it to "train personnel and modify security procedures to comply with the preliminary injunction." Dkt 75 at 6. This articulates concerns over security and costs. These surely are compelling interests in the prison context. *Baranowski v Hart*, 486 F3d 112, 125 (5th Cir 2007) (holding policy "related to maintaining good order and controlling costs" involves "compelling government interests").

Even so, these generalized interests are inadequate to meet TDCJ's burden. And that is "to demonstrate that its policy 'actually furthers' a compelling interest when applied to 'the particular claimant whose sincere exercise of religion is being substantially burdened.'" *Tucker v Collier*, 906 F3d 295, 302–03 (5th Cir 2018), quoting *Holt*, 574 US at 363–64. The Supreme Court likewise instructs that courts "cannot rely on broadly formulated governmental interests," but rather must scrutinize "the asserted harm of granting specific exemptions to particular religious claimants." *Mast v Fillmore County*, 141 S Ct 2430, 2432 (2021) (Gorsuch, J, concurring), quoting *Fulton*, 141 S Ct at 1881, in turn quoting *Gonzales v O Centro Espirita Beneficente União do Vegetal*, 546 US 418, 431 (2006) (cleaned up).

*As to security,* TDCJ fails to explain why provision of the requested accommodations would require any substantial training or modification of security procedures. See *Moussazadeh*, 703 F3d at 794. Indeed, the assertion rings particularly hollow considering kosher meals and hot pots are already available for purchase in the commissary.

*As to cost,* the parties don't sufficiently brief the issue. But the Fifth Circuit in *Moussazadeh* found that "the increased cost of providing kosher food to all observant prisoners is minimal," where the increased cost is but $88,000 per year as against a "total food budget" for TDCJ of $183.5 million. 703 F3d at 794–95. Those numbers have no doubt increased since that decision in 2012. But the point remains—the expense to accommodate Turner is miniscule in comparison to the total TDCJ food budget. And RLUIPA expressly anticipates that "this chapter may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 USC § 2000cc-3(c).

TDCJ hasn't at present demonstrated that its policy actually furthers a compelling government interest when applied to Turner.

### E.   Least restrictive means

The Fifth Circuit holds that *least restrictive means* "has its plain meaning." *Sossamon*, 560 F3d at 332. It requires the government to show "that it lacks other means of achieving its desired goal without imposing a substantial burden on the exercise of religion by the objecting parties." *Burwell v Hobby Lobby Stores Inc*, 573 US 682, 728 (2014). "Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S Ct at 1881.

This is "the most demanding test known to constitutional law." *City of Borne v Flores*, 521 US 507, 534 (1997). True, courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Chance v Texas Department of Criminal Justice*, 730 F3d 404, 410 (5th Cir 2013), quoting *Cutter v Wilkinson*, 544 US 709, 723 (2005) (cleaned up); see also *O'Lone v Estate of Shabazz*, 482 US 342, 349 (1987). But those administrators may not simply "assume a plausible, less restrictive alternative would be ineffective." *United States v Playboy Entertain-*

*ment Group Inc*, 529 US 803, 824 (2002). As aptly and recently summarized by Justice Gorsuch, "RLUIPA prohibits governments from infringing sincerely held religious beliefs and practices except as a last resort." *Mast*, 141 S Ct at 2433 (Gorsuch, J, concurring).

In short, the burden is on the government to affirmatively establish that alternatives to its chosen course—here, the denial of free kosher meals to an indigent prisoner who sincerely believes he must observe a kosher diet as part of his faith—are ineffective. *Ali*, 822 F3d at 786. And the present record doesn't support TDCJ contention that it has adopted the least restrictive means of meeting its compelling governmental interests. This is particularly so where it has already provided prisoners the very accommodation requested by Turner. See *Morris v Davis*, 6:18-cv-0322 (WD Tex) at Dkt 18; *Atomanczyk v Texas Department of Criminal Justice*, 4:17-cv-00719 (SD Tex) (Eskridge, J) at Dkt 107-6. Nothing indicates why such an accommodation can't be here afforded to Turner.

### ii.  Other considerations

By the above, Turner makes a *prima facie* showing of a substantial likelihood of success on the merits of his RLUIPA claim. None of the other pertinent factors counsel against issuance of a preliminary injunction on the terms he requests.

*As to irreparable injury,* the Fifth Circuit holds that in the First Amendment context, "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Opulent Life Church v City of Holly Springs, Mississippi*, 697 F3d 279, 295 (5th Cir 2012) quoting *Elrod v Burns,* 427 US 347, 373 (1976). "This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms." Ibid.

It's not difficult to understand why this is so here. Turner is harmed each time he must choose between foregoing a meal and violating his sincerely held belief that he must observe a kosher diet. He faces this harm daily,

and he will continue to face this harm until the matter is resolved. See Dkts 13 at 17–18, 66 at ¶ 43 & 102 at 6.

This factor favors Turner.

*Balance of potential harms.* Because Turner easily establishes an irreparable harm, TDCJ needs to present "powerful evidence of harm to [their] interests" to prevail on this requirement. *Opulent Life Church v City of Holly Springs*, 697 F3d 279, 297 (5th Cir 2012); see also *Ali v Stephens,* 2014 WL 495162, *3 (ED Tex).

At times, TDCJ classifies its harm as an entire reworking of existing policies regarding Jewish designated units. For example, see Dkt 94 at 10, 16. But such a drastic remedy needn't be considered at present, if for no other reason than that Turner doesn't request it. The concrete harm to TDCJ appears to be providing one prisoner shelf-stable kosher foods, a hot pot, and a storage locker. Dkt 102 at 3. The irreparable injury faced by Turner thus outweighs any minimal, threatened harm to Defendants. See *Moussazadeh,* 703 F3d at 796.

This factor favors Turner.

*As to public interest.* The Fifth Circuit holds that "injunctions protecting First Amendment freedoms are always in the public interest." *Opulent Life Church,* 697 F3d at 298; see also *Strong v Livingston,* 2013 WL 6817095, *3 (SD Tex 2013). This principle applies with equal force to RLUIPA claims. *Opulent Life Church*, 697 F3d at 298.

This factor favors Turner. And with that, all pertinent factors found to be in Turner's favor. A preliminary injunction will thus issue by separate order.

4.   Appointment of counsel

"There is no right to appointment of counsel in civil cases, but a district court may appoint counsel if doing so would aid in the efficient and equitable disposition of the case." *Delaughter v Woodall*, 909 F3d 130, 140 (5th Cir 2018) (quotation marks and citation omitted). A district court should consider:

- o   The type and complexity of the case;
- o   Whether the indigent is capable of adequately presenting his case;
- o   Whether the indigent is in a position to investigate adequately the case; and,
- o   Whether the evidence will consist in large part of conflicting testimony so as to require skill in the presentation of evidence and in cross examination.

*Ulmer v Chancellor*, 691 F2d 209, 213 (5th Cir 1982). "Generally, appointment of counsel should be reserved for cases presenting 'exceptional circumstances.'" *Delaughter*, 909 F3d at 141.

A motion by Turner for appointment of counsel was previously denied. Dkts 71 & 77. But in light of the above ruling, the *Ulmer* factors weigh heavily in Turner's favor. The claims have been substantially narrowed, but RLUIPA remains a complex area of the law. And while Turner has thus far admirably represented himself, he will no doubt benefit from counsel. Additionally, this action will necessitate careful document review and depositions, which Turner simply can't adequately conduct such from a prison cell. Last, a significant amount of testimony is likely, particularly regarding the issues of compelling government interest and least restrictive means.

These are "exceptional circumstances" wherein appointment of counsel would doubtlessly "aid in the efficient and equitable disposition of the case." *Delaughter*, 909 F3d at 140–41. Counsel will be appointed on behalf of Turner.

### 5. Conclusion

The motions by Defendants Texas Department of Criminal Justice, Bryan Collier, David Goldstein, and Timothy Jones are GRANTED IN PART and DENIED IN PART. Dkts 94 & 110.

21

The motions are GRANTED as to the First Amendment free exercise claim, the Fourteenth Amendment equal protection claim, and the Americans with Disabilities Act claim. Those claims are DISMISSED WITH PREJUDICE.

The motions are otherwise DENIED.

The motion by Plaintiff Noel Turner for preliminary injunction is GRANTED. Dkt 102.

A separate order of preliminary injunction will be ENTERED compelling Defendants as follows:

> The State of Texas must provide Plaintiff Noel Turner three shelf-stable kosher meals per day, a hot pot that is to be used to heat those meals, and a location in which he can store such items.

This relief is narrowly drawn, extends no further than necessary to correct the harm, and is the least intrusive means necessary to correct the harm. 18 USC § 3626(a)(2).

TDCJ retains discretion under RLUIPA to avoid the preemptive force of this injunctive relief "by changing the policy or practice that results in a substantial burden on religious exercise, by retaining the policy or practice and exempting the substantially burdened religious exercise, by providing exemptions from the policy or practice for applications that substantially burden religious exercise, or by any other means that eliminates the substantial burden." 42 USC § 2000cc-3(e).

A separate order appointing counsel for Turner will also be ENTERED.

So ORDERED.

Signed on September 30, 2022, at Houston, Texas.

Hon. Charles Eskridge
United States District Judge

22